**People of the State of Illinois, Appellee, v. Anthony Gallas, et al., Appellants.**

**Gen. No. 50,921.**

First District, Second Division.

November 29, 1966.

Julius Lucius Echeles, of Chicago, for appellants.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a conviction, for the crime of theft, after a jury trial. Defendant Gallas was sentenced to 4 to 10 years and defendant DiDonato to 2 to 10 years in the Illinois State Penitentiary.

Defendants were indicted on four counts of theft, said indictments charging defendants with unauthorized control over four television sets, in violation of Chap 38, § 16–1, Ill Rev Stats (1961).

The testimony on behalf of the State showed that a driver for Maloney's Wabash Motor Service, Inc., picked up some television sets from Zenith Radio Distribution Corporation, in Chicago, on February 14, 1963. The driver then went to a restaurant for coffee and when he returned to his truck someone held him up and took his tractor and trailer.

One Raymond Shampo testified that he was employed by the Admiral Automotive Company, 2858 Archer Avenue, Chicago; that Admiral Automotive is a generator and starter rebuilding plant; that the store also sells television sets, clothes, whiskey, women's dresses, coats and topcoats; that a Mr. Gruse was his supervisor; that on February 14, 1963, at about 9:00 a. m., he saw Gruse talking to a man by the name of Dee, after which six men, the witness and five others, unloaded a truck; that about sixty pieces were taken off the truck and put in the basement of the store; that the next day he saw defendants around 2:00 p. m., at which time he gave them three television sets; that later that day, around 6:00 or 7:00 p. m., he saw the men again; that a television set had been broken and one of defendants wanted to exchange the set for another; that the witness gave them three more sets from the basement; that FBI agents were present on the premises while all this occurred; and that after the witness brought up three television sets from the basement, the FBI agents arrested defendants while they were placing them in the trunk of their car. Shampo further testified that he had taken a television set from the premises but brought it back after he learned it was stolen.

FBI agent Bennett testified that he was watching the building at 2858 Archer Avenue on February 15, 1965,

and that about 6:00 or 6:30 p. m. he was inside the building and saw defendants get out of their car and take a carton out of the trunk; that thereafter, he saw defendants load three cartons into the trunk and get into the car, after which other FBI agents arrested them; and that several other people came into the premises during the day and left with various cartons but these other persons were not arrested. Later, defendants made an offer of proof that they could show, through the agent, that two Silvertone televisions were recovered by another agent, which had previously been part of a stolen load of Silvertone televisions and that the persons who had purchased these two television sets were not arrested or charged with the crime of receiving stolen property. The offer of proof was denied.

FBI agent Moore testified that at about 6:30 p. m. on the evening of February 15, 1965, he was on the premises of the Admiral Automotive Parts and heard someone say to Ray Shampo, "I am returning one of the sets"; that he also heard the same person say, "We want three more sets"; that he saw defendants take the cartons out the back door to their car; that defendants were then arrested; that the witness was on the premises pursuant to a search warrant issued by a United States Commissioner, relating to stolen Silvertone television sets; that a large number of Silvertone television sets were recovered on the premises of the Admiral Automotive store; and that the four television sets recovered from the possession of the defendants were Zenith sets.

Defendant Anthony DiDonato testified that he was 52 years of age, and operated a restaurant in Plano, Illinois; that he knew Gruse for about three months before February 15, 1965; that Gruse was the operator of both a general merchandising and generator rebuilding business; that before the date of his arrest, he had been at the place of business and he purchased some items of personal

wear; that on February 15, he went to the place of business to buy a generator for this car, which was then parked at 621 South Loomis; that he called codefendant Anthony Gallas to drive him there; that he arrived before noon and bought a generator; that he also bought three more jackets for $2 apiece and gave Gruse $10.50 for a generator; that Gruse asked if he would be interested in buying a couple of television sets, because Gruse said he had just bought a "job lot"; that the sets would cost $100 apiece; that he did not buy a television set at this time, but just picked up the jackets and the generator; that he then went home, talked to his wife who agreed to the purchase; that Gallas also decided he wanted one; that he and Gallas returned at about 2:00 or 3:00 in the afternoon and bought two sets from Gruse and paid him for them; that he understood that a "job lot" meant merchandise left over which stores could not sell; that he took his television set home but the set would not work; that around 6:00 p. m. he and Gallas returned to the store; that he took the television set from his car, brought it into the store and told them it would not work; that at that time, he asked for three television sets because Gallas' sister wanted one, as did his oldest son; that he also required a set to replace the one he purchased earlier which he had returned; and that he did not pay for the sets at that time. DiDonato also testified that he had no knowledge that the television sets had been stolen.

At the close of the People's case, defendants moved for a directed finding of not guilty on all counts. The following took place:

. . . . . .

The Court: As to the first count I am directing that one out.

Mr. Martwick: (Assistant State's Attorney) On what basis?

The Court: On the basis that there is—I don't think that you proved recent possession.

Mr. Martwick: They have possession. It is stipulated those are the sets they had, not even 24 hours later.

The Court: The second count as to receiving, that will stand. We will continue on the receiving.

Mr. Martwick: 24 hours later isn't recent possession?

The Court: Not in this case, not on the circumstances.

Mr. McDonnell: (Defense Attorney) I can finish this tomorrow, Judge. I will have one witness.

The Court: All right.

Mr. Martwick: Well,—

· · · · · ·

(WHEREUPON THE PEOPLE RESTED THEIR CASE IN CHIEF.)

· · · · · ·

Mr. McDonnell: I would ask the jury be instructed that the first count has been dismissed. I am entitled to that.

Mr. Martwick: Why don't you instruct them tomorrow morning?

The Court: You get together and write the instruction. We will adjourn until 10:30 o'clock. The jury will come in before 10:30. I again caution you not to have any conversation among

yourselves or with any others concerning this case.

. . . . . .

A memorandum order entered by the court on this date (April 8, 1965), stated in part:

And the Court hearing Counsel for each Defendant in support of said Motion as well as the State's Attorney, Counsel for the People in opposition thereto and the Court being fully advised in the premises doth ALLOW said Motion and orders that said Motion be and the same is hereby ALLOWED accordingly as to Count #1 of the Indictment.

. . . . . .

(WHEREUPON THE FURTHER TRIAL OF THIS CAUSE WAS ADJOURNED UNTIL FRIDAY, APRIL 9, 1965, AT THE HOUR OF 10:30 O'CLOCK A. M.)

(FRIDAY, APRIL 9, 1965, 10:30 O'CLOCK A. M. COURT CONVENED PURSUANT TO ADJOURNMENT.)

The Clerk: Anthony Gallas, Anthony DiDonato.
Mr. McDonnell: Defense is ready.
The Court: We will have a short recess.

(AFTER A RECESS IN THIS CAUSE.)

Mr. Martwick: Judge, for the purposes of the record there was a discussion yesterday. I think it would be proper for us to proceed on Count 1.

Your Honor is familiar with the exercising of unauthorized control.
The Court: The other three counts are nolled.

137

Mr. Martwick: You have rescinded the order, Judge, you previously thought you might have entered?

The Court: That's right.

. . . . . .

A memorandum order entered by the court on this date (April 9, 1965), stated in part:

And the Court being fully advised in the premises that the State's Attorney, Counsel for the People shall proceed in this cause on Count #1 and the Court, having jurisdiction over the subject matter and parties thereto, doth order that the order heretofore entered in this cause on April 8th, 1965, allowing each defendants Motion for a directed verdict of not guilty as to Count #1, be and the same is hereby rescinded.

And the State's Attorney, Counsel for the People now proceed in Count #1 in this cause.

And the State's Attorney, Counsel for the People now says he will not further prosecute the 2nd, 3rd and 4th, Counts of the indictment in this cause; Thereupon it is ordered that said 2-3-and 4th Counts of this indictment be and the same are hereby dismissed out of this Court.

. . . . . .

(JURY IN JURY BOX.)

Mr. McDonnell: May I proceed, your Honor?

The Court: You may.

It is defendants' contention:

(1) that the order of rescission, entered on April 9, 1965, of the order of not guilty as to count one,

138

entered on April 8, 1965, violated their constitutional rights against double jeopardy;

(2) that there was insufficient evidence to justify the verdict of the jury in that there was total absence of proof showing that defendants knew the four television sets, which were bought, had previously been stolen;

(3) that defendants' constitutional right to a fair trial was violated when the prosecutor brought out, over defense objection, that defendant Di Donato refused to answer questions when interrogated after his arrest; and

(4) that prejudicial error was committed by the prosecutor in his final argument.

The People respond:

(1) that the order of not guilty entered on April 8, 1965, which was later vacated on April 9, 1965

 (a) was not a valid order in that the jury was not instructed on the finding of not guilty,

 (b) did not result in double jeopardy in that the jeopardy took place in the same trial as the conviction sought to be set aside,

 (c) could not be used as a basis for double jeopardy since it was not raised in the trial court and as a result was waived,

(2) that there was evidence that defendants knowingly exerted unauthorized control over the property of another and were properly convicted of theft;

(3) that defendant DiDonato refused to answer questions and this was properly received into evidence as an admission by silence. Furthermore, no timely objection was raised at the time the evidence was introduced;

139

(4) that the prosecutor's final argument was justified as a reply to provocative remarks made by defense counsel.

We find no case directly in point in response to defendants' first contention. We feel, however, that the judgment of the lower court should be reversed.

■ We disagree with the People's contention that the first count could not be dismissed by the court without the submission of a jury instruction. In Jarman v. State, 178 Miss 103, 172 So 869 (1937), the court held that where the accused is entitled to a directed verdict, judgment can be rendered by the trial court without the useless formality of having the jury return the verdict. Therefore, we hold that the court had the authority to dismiss the charges contained in count one without the submission of a jury instruction. The court made the determination as a question of law and the followup by an instruction was a formality.

■ We likewise do not find merit in the People's contention that, assuming a valid finding of not guilty, it could be rescinded prior to the discharge of the jury. The closest case in point to the instant situation is Menton v. Johns, 151 Colo 276, 377 P2d 104 (1962), (a petition for a writ of prohibition arising out of a criminal case). In that case the defendant's motion to dismiss was allowed. The jury was discharged. Subsequently, the State petitioned for a new trial. The court held that a grant of the State's petition would constitute double jeopardy and the defendant, Menton, was ordered discharged. We do not find any reason to vary the rule in a case where a rescission of the order is asked by the State prior to the discharge of the jury. We hold that a defendant, who has been placed in jeopardy and who has charges dismissed by the trial court, cannot have the charges reinstated either before or after the jury has been discharged.

140

The People rely on the case of State v. Vigil, 33 NM 365, 266 P 920 (1928). We do not believe that case applicable to the present situation. In that case the court held that erroneous instructions, withdrawing charges of first and second degree murder and submitting manslaughter charges, could be recalled before the jury finally retired and new instructions, excluding manslaughter charges and submitting first and second degree murder charges, could be substituted without raising the question of double jeopardy. The reasoning of the court was based primarily on the proposition that instructions may be changed by the court during a trial any time prior to the discharge of the jury. That case can be distinguished from the instant case in that we are not dealing with an instruction but with a judgment of not guilty.

■ We likewise find no merit in the People's contention that the question of double jeopardy was waived since it was not raised in the trial court. Under the authority vested in us by virtue of Chap 38, § 121–9(a), Ill Rev Stats (1963), we feel that substantial justice requires that defendant not be placed in jeopardy twice for the same crime and that such an infringement on defendant's rights can be raised for the first time on appeal. We do not have to consider the other contentions raised by defendant in that the judgment is reversed. The judgment is reversed.

Judgment reversed.

BRYANT, P. J. and BURKE, J., concur.