**The People of the State of Illinois, Plaintiff-Appellee,
v. John McFadden, Defendant-Appellant.**

**Gen. No. 53,478.**

First District, First Division.

March 10, 1969.

Howard T. Savage and Robert C. Power, of Chicago, for appellant.

William G. Clark, Attorney General of State of Illinois, of Chicago (Fred G. Leach, Assistant Attorney General, John J. Stamos, State's Attorney of Cook County, of Chicago, and Elmer C. Kissane and Theodore A.

Shapero, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, John McFadden, was tried before a jury in the Circuit Court of Cook County, Criminal Division, upon a three-count indictment charging that he murdered one Sam Collins. The defendant was found guilty and was sentenced to a term of not less than twenty nor more than forty years in the Illinois State Penitentiary. An appeal was taken to the Illinois Supreme Court and that Court transferred the case to this Appellate District.

The defendant, on appeal, assigns as errors the following: (1) the trial court denied motions for a directed verdict in favor of the defendant at the close of the State's case-in-chief and at the close of all the evidence in the presence of the jury to the prejudice of the defendant; (2) the defendant was represented by incompetent counsel; (3) improper conduct of the prosecuting attorney; and (4) improper remarks by the trial judge to the jury.

The record reveals that Cleveland McGee, an employee of Poe and Sons Supermarket at 3658 West Cermak Road, Chicago, testified that at 7:30 p. m. on March 20, 1967, a customer whom he identified as the defendant, entered the store, pulled out a gun, and announced it was a "stick up." McGee stated that the defendant told him and a man he knew as Larry (Sam Collins) to lay down on the floor while he, the defendant, took the money in the cash register. While they were both on the floor a short was fired, but neither one was hit. They were then made to march back to the rear of the store and McGee said that the defendant told him to get into the washroom. Sam Collins then asked the defendant for a drink of water. The defendant permitted him to get a

drink, but told him to make it quick. The next thing witness McGee heard from the washroom was the sound of falling bottles and then two shots. McGee came out of the washroom, saw the defendant leaving the store, and heard Sam Collins say, "I am shot; call the police." McGee testified that he looked in the cash register and saw that it was empty. At that point James Coleman came in the store and subsequently his mother called the police from his apartment above the store.

James Coleman testified that he lived above the grocery store. He said that he looked in the window of the store and saw a man with a gun and wearing a long black coat. Coleman stated that he also saw Larry (Sam) Collins and another man. Mr. Coleman further testified that he saw the man with the gun walk to the back of the store with the other two people in front of him. One of the two men went into the washroom and Larry (Sam) Collins went around the meat counter to a sink. All of a sudden, Coleman said, "everything started falling off the shelves and everything and I heard about two, three shots and I ran." After the man in the black coat left the store Coleman went in. He said he saw blood on the door.

Reverend Poe, the owner of the grocery store, testified that when he left his store on the morning of March 20, 1967, there was approximately $37 in currency and about $20 in coin in the register. When he returned that evening, after the murder, the money was missing.

The defendant, John McFadden, took the stand in his own defense. He testified that he had been in Poe's store over a thousand times and had seen McGee frequently. The defendant said he knew the decedent as Larry and had spoken to him once or twice. On the day in question he had One Hundred Twenty-seven Dollars on his person when he went to Poe's store. He had a gun in his belt which he had earlier removed from the purse of a woman friend to prevent her from getting

135

"into trouble with it." Larry (Sam) Collins and McGee were in the store when he entered. The defendant asked Larry (Sam) if he could use the washroom and when the deceased asked him if he knew where it was he reminded Larry of a previous occasion when he saw Larry and McGee stealing cigarettes from the store's vending machine. The defendant said that when he went to the washroom he saw a knife in Larry's hand. He further testified that Larry stabbed him in the face with the knife while McGee grabbed him from behind. He said that after Larry had stabbed him in ten different places he got his gun and fired twice at Larry, who then slumped to the floor. Afterwards, the defendant said, he staggered out of the store and went home to seek medical aid. He denied that he intended to or did rob the store; that he had ordered Larry and McGee to lie on the floor; that he shot a bullet over their heads, or that he said it was a "stick up."

William McFadden Sr., the father of the defendant, testified that when he saw his son about 8:00 p. m. on the evening in question, he observed his son was wounded in numerous places and he rushed him to a hospital.

The defendant's fifteen-year-old brother testified that at some time prior to the shooting he had told his brother, the defendant, that James Coleman had beaten him up. He said that his brother left their home, on that occasion, found Coleman and fought with him.

A friend of the defendant testified that Reverend Poe had been "cut up" by the deceased in 1961 and that the deceased's reputation for violence was bad.

■ We first consider the contention that the defendant was prejudiced by the denial of the motions for directed verdict in open court and in the presence of the jury. The defendant correctly states that "[a] fair trial contemplates that the jury will, alone, fulfill its duty of determining the facts, and it is not the province of the judge, in a criminal case, to express by word or indicate

136

by conduct, in the jury's hearing, any opinion upon the facts." People v. Sprinkle, 27 Ill2d 398, 403, 189 NE2d 295, 298. The defendant argues that jurors are ever watchful of the attitude of the trial judge and his influence upon them is necessarily and properly of great weight, thus his lightest word or intimation is received with deference and may prove controlling.

The record reveals in the case at bar that after the State announced that it has rested its case-in-chief the following occurred:

> Mr. Lowe: (defendant's counsel) "Your honor, at this time, the defense would like to make a motion for a directed verdict on the basis of the State not having proved a prima facie case."

> The Court: "That motion will be denied."

Again after the defense announced that it will rest the following occurred:

> Mr. Lowe: "At this time, your honor, I would like to renew my motion for a directed verdict on the basis of the failure of the State to prove a prima facie case."

> The Court: "Motion denied."

We have carefully reviewed the cases cited by the defendant in support of the contention that the ruling by the Court invaded the province of the jury and had such prejudicial effect that it requires a reversal of the conviction and find that they are distinguishable from the case at bar. In People v. Marino, 414 Ill 445, 111 NE2d 534, the trial judge assumed the role of a prosecutor and displayed his disbelief of the testimony of a witness. In People v. Sprinkle, 27 Ill2d 398, 189 NE2d 295, there were numerous questions and comments made by the trial court which invaded the province of the jury and required a remandment of the case for a new trial.

It would unduly lengthen this opinion and would serve no useful purpose to detail the other cases cited on this point inasmuch as we believe the factual situation present here differs materially from that present in the cited cases.

 While it would have been more advisable to recess the case when a ruling was made on a question of law, nevertheless, we do not conclude that the defendant was prejudiced by what took place. Neither do we believe that the trial court invaded the province of the jury in the case at bar. It is undisputed that the court merely stated that the motion was denied. No other comments were made. There is nothing to even show that this occurrence was loud enough to have been heard by the jurors. It is common knowledge of judges who have sat in the Criminal Court, as we did, that generally such motions are made before the bench in a whisper so that the motion would get in the record without the jury being aware of the incident. At best the incidents could only be considered tactical errors and even as such we believe that their effect was cured by the instructions of the court.[1]

---

[1] "In giving these instructions, it is the intention of the court to instruct the jury as to the law applicable to the case, *but it is not the intention of the court in the least degree to give the jury any opinion as to whether or not the defendant is guilty of the offense charged in the indictment,* or to express any opinion as to the weight or sufficiency of the testimony, or as to the credibility of any witness.

"If you have heard any evidence in this case which the court afterwards struck out, you are to wholly disregard such evidence in arriving at your verdict.

"*From anything the court has said or done in this case you are not to understand that he has any opinion as to the facts appearing in evidence.* It is the duty and province of the jury to weigh the evidence which has been introduced in the case and to determine what fact, or facts, such evidence established, and, having

█ In his second contention the defendant argues that his trial counsel was incompetent and that his incompetence prevented the defendant from receiving a fair trial. The defendant maintains that his counsel blundered when he presented his motions for directed verdict in the presence of the jury and when he recalled two of the State's witnesses as defense witnesses. We have already discussed the question of the motions for a directed verdict. Nothing more need be said other than that it is obvious to us that defense counsel's brief motions for directed verdict in the face of the State's evidence were made by him only to protect his record and there has been no showing made to prove that the jury was even aware of the consequences of this legal procedure.

█ The second point raised under the defendant's second contention involves the propriety of recalling two of the State's witnesses as defense witnesses. The defendant argues that defense counsel incompetently called the two witnesses and elicited testimony from them that was prejudicial to the interests of his client. The two witnesses specifically complained of are Mary Borden, sister of the deceased who was called by the State as a life and death witness, and Reverend Poe, the owner of the supermarket. The defense strategy as revealed by the record was to acquaint the jury with the fact that the deceased was an incorrigible person and that the de-

done so, to apply such facts to the law as stated in these instructions." (Emphasis added.)

"The jury are the sole judges of the facts in the case, the credibility of the witnesses, and the weight to be given to their testimony. *And, in anything that the court may have said throughout the trial or anything that the court may say in the instructions; the court has not intended and does not now intend to express any opinion upon the facts of the case, upon the credibility of the witnesses, or the weight to be given to their testimony.*" (Emphasis added.)

fendant's version of what took place was truthful. By questioning Mary Borden the defense counsel showed that the deceased was a much larger man than the defendant. Direct examination of Reverend Poe brought out that the deceased had an argument with an armed man in Poe's home and that both Poe and the armed man were cut up by the deceased. The defense counsel also showed by Reverend Poe that the deceased had been in jail for non-support and that on a different occasion the deceased had been involved in a fight which resulted in his being incarcerated.

The defendant argues, however, that part of the testimony of these witnesses was irrelevant and prejudicial. When putting witnesses on the stand there is always a danger that their testimony may not be entirely favorable or satisfactory. This will always be a matter of judgment by counsel. We believe, as we stated earlier, that the defense counsel conducted himself in a competent manner and that the present contention of the defendant is largely an effort to have counsel adjudged incompetent by hindsight and second guessing. People v. Bernatowicz, 35 Ill2d 192, 220 NE2d 745. From a review of the record, which we do not find to be at all analogous to the facts and circumstances of the case of People v. McCoy, 80 Ill App2d 257, 225 NE2d 123, cited by the defendant, we conclude that the defendant's representation was competent and effective, and that there was no denial of due process of law.

■ ■ In his third contention the defendant claims that the prosecuting attorney made improper prejudicial remarks in the presence of the jury. When the prosecution rested the Assistant State's Attorney made this statement: "Judge, at this time the State will rest its case-in-chief, the State having previously furnished the police reports. We'll furnish our entire file at this time. The State will rest its case-in-chief." The defendant argues that the prosecutor's remarks that they had furnished

140

the defendant with police reports and that they would also furnish their entire file could have been made only to influence the jury by pointing out that the State withheld nothing from the defendant. The record shows that no objection was made to this statement. While such remarks are improper in a criminal trial we fail to see how such remarks could prejudicially influence the jury so that the verdict could have been otherwise, had the remarks not been made. People v. Caldwell, 79 Ill App2d 273, 224 NE2d 634. It is noted by the State that these comments were never repeated during the remainder of the case, including the closing arguments.

The defendant's fourth and last contention takes exception to the action of the trial court in directing the jury to only consider Count III of the indictment. Counts I and II of the indictment charged defendant with murder and nothing more. Count III of the indictment charged the defendant with murder while committing the forcible felony of robbery.

Just prior to reading the instructions to the jury, the court made the following statement to the jury:

> THE COURT: "You have heard all the evidence and you have heard the final arguments—I hope you can hear me. You have heard all of the testimony and you have heard the final argument and I am about to read to you the instruction.
>
> "Now at the start of the case I described to you the three counts in one indictment, three alleged versions of one indictment and I am now going to read to you the one count that goes to you for your consideration, one out of the three.
>
> "Now that one count that goes to you for your consideration is that on March 20, 1967, John McFadden committed the offense of murder in that he committed a forcible felony to wit robbery, intentionally

and knowingly shot and killed Sam Collins with a gun without lawful justification in violation of chapter 38, section 9–1(a)3 of the Ill Rev Stats, 1965. That is the count going to you for your consideration."

The defendant urges that this statement by the court "can be characterized first as a direction to the jury that the defendant, if guilty at all, was guilty of the felony-murder. Such a direction to the jury withdrew from them defendant's defense of self-defense, and was an instruction that his plea of self-defense was unavailing." It is further urged that it does not appear that the State elected to proceed only upon the felony-murder count, that therefore, it was improper for the trial judge to make an election for the State and that by so doing the court indicated to the jury his own feeling about the evidence in the case. The defendant argues that it was the duty of the court in such a situation to instruct the jury to find the defendant not guilty on Counts I and II. We find no merit in this contention.

Section 115-4(k) of the Code of Criminal Procedure (Ill Rev Stats 1967, c 38, § 115-4(k)) provides that at the close of all the evidence the court may make a finding or direct the jury to return a verdict of not guilty if the evidence is insufficient to support a verdict of guilty. The case of People v. Gallas, 77 Ill App 2d 132, 221 NE2d 782, held that a trial court has the authority to dismiss the charges contained in one count without the submission of a jury instruction. Thus, the two counts in the instant case could properly be dismissed by the trial court without the jury being instructed on a finding of not guilty in the first two counts. As stated in People v. Gallas, 77 Ill App2d 132, 140, 221 NE2d 782, 786, "The court made the determination [to dismiss

the first count of the indictment] as a question of law and the follow-up by an instruction was a formality."

We must also point out that the instructions quoted above were given to the jury. Without those instructions the jury would have been free to conjecture, to guess, to theorize and to predict what the judge meant by his every act and word. In addition, the jury was properly instructed on the presumption of innocence and on the right of self-defense.

From our review of the record we are satisfied that the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt; that the defendant received a fair trial and that he was properly found guilty by the jury. The judgment of the criminal court is, therefore, affirmed.

Affirmed.

ADESKO, P. J. and MURPHY, J., concur.