THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM R. HOCKADAY, Defendant-Appellant.

Third District    No. 81-97

Opinion filed October 9, 1981.

Robert Agostinelli, Bonita L. Welch, and Frank W. Ralph, all of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury trial in Rock Island County the defendant William Hockaday was found guilty of forgery and sentenced to two years to the Department of Corrections. The charge was brought by information and the insufficiency of the information to state an offense was raised initially by a motion to dismiss or quash the information and again after conviction was entered and sentence imposed by motion in arrest of judgment. All motions were denied by the trial court, and the only issue raised on this appeal is whether the information charged an offense.

Insofar as is material to this case the information provided:

"* * * defendant, with the intent to defraud, knowingly delivered to Debbie Saylor a document apparently capable of defrauding another, in that it purported to have been made by another, Robert Owens and Tom Hanson, a copy of the document is attached hereto and made a part hereof by reference thereto, said document being a check numbered 1633 of Energy Specialty Products, Inc., a corporation licensed to do business in the State of Illinois, drawn on the River Forest State Bank and Trust Company of River Forest, Illinois, dated March 12, 1980, payable to Stephanie A. Morrow in the amount of Four Hundred Seventy-five and no/100 Dollars ($475.00) and signed as maker Robert Owens and Tom Hanson, knowing the document to have been thus made, in violation of Ill. Rev. Stat. 1979, ch. 38, par. 17—3 a2."

The testimony established that on March 14, 1980, defendant went to the home of Stephanie Morrow around 10 a.m. He told her that a man named Charles Pinkus owed him money and could pay by check, but that defendant had no identification to get the check cashed. Morrow agreed to cash it for him. She had met Pinkus once at a party.

Defendant left then and returned 20 minutes later with a check from Energy Specialty Products made payable to Stephanie Morrow. Morrow drove defendant in the direction of her husband's bank. On the way, they stopped at Andy's 5th Street Tavern. Defendant said that he knew a cocktail waitress there who might be able to cash the check.

Debbie Saylor, the waitress on duty that morning, had seen the defendant in the tavern the night before. Defendant presented the check to her and she went to cash it. Faye Caldwell, another waitress on duty,

came up to Saylor and told her not to cash the check. She advised Saylor to check the name—the check was made out to a woman, not to defendant. The two women explained to defendant that they could not cash the check for him. Defendant said that Stephanie Morrow was outside in the car and left to get her.

Saylor saw that the name endorsing the check was the same as that appearing on Morrow's driver's license. She copied the license number and cashed the check for its full amount—$475. Morrow picked up the money and handed it over to defendant when they left the tavern. Morrow denied ever having signed anything on the front or back of the check.

The State further established that sometime in mid-January, the offices of Energy Specialty Products, a Cicero-based company, were burglarized. Later that month, the company's vice-president, Roger Rasckke, ascertained that 100 blank checks had been taken. The account was thereupon closed.

Authorized signatures for checks paid by Energy Specialty Products were those of Rasckke and the company's president, Stanley Fox. Tom Hanson, Robert Owens, Charles Pinkus, William Hockaday and Stephanie Morrow were all unknown to Rasckke. Nor had any of these individuals ever been employed by Energy Specialty Products.

The jury found the defendant guilty of forgery as charged. On this appeal the defendant has renewed his objections made in the trial court, that the information failed to allege an offense.

According to section 111—3(a)(3) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—3(a)(3)), the charging instrument must include "The nature and elements of the offense charged." (*People v. Deal* (1979), 69 Ill. App. 3d 74, 387 N.E.2d 21.) If the charging instrument fails to set forth each element of the offense charged, then a motion to dismiss, if made, must be granted by the trial court. (Ill. Rev. Stat. 1979, ch. 38, par. 114—1(a)(8).) To the same effect is section 116—2(b)(1) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 116—2(b)(1)) as applied to motions in arrest of judgment.

■■ When the question as to the sufficiency of the charging instrument is raised at the trial level, as it was in the present case, the instrument must be evaluated by the court on a standard of strict adherence to statutory requirements. (*People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171.) The holding in *Lutz* emphasizes the differences in the standard to be applied when the sufficiency of the charging instrument to state an offense is first raised in the trial court from that to be applied where such sufficiency is raised for the first time on appeal. In the former case as announced in *Lutz* the trial court is required to determine whether the elements of the

offense are included in the charging instrument, and the propriety of such decision may be a reviewable issue on appeal. In the latter case a court of review is concerned with only two aspects of the charging instrument. Does it apprise the defendant of the charges against him with sufficient particularity that he may prepare his defense? Is the description of the offense sufficient so that a conviction or an acquittal may be pleaded in bar of a subsequent prosecution? It appears from the record the trial court may have incorrectly applied this latter standard.

The information purportedly charged the offense of forgery by delivery, a violation of section 17—3(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 17—3(a)(2)). That section provides that:

> "(a) A person commits forgery when, with intent to defraud, he knowingly: * * * (2) Issues or delivers such document knowing it to have been thus made or altered."

To make sense of the above-cited provision, it is necessary to ascertain what "such" document is and how it was "thus" made or altered. The answer is to be found in section 17—3(a)(1), immediately preceding the section under which defendant was charged. That section provides that:

> "(a) A person commits forgery when, with intent to defraud, he knowingly: (1) makes or alters any document apparently capable of defrauding another in such a manner that it purports to have been made by another or at another time or with different provisions, or by authority of one who did not give authority."

Thus, to commit forgery by delivery under 17—3(a)(2) one must, with intent to defraud, knowingly deliver a forged document. Section 17—3(a)(1) in turn specifies the four ways in which a person may forge a document—(1) by making or altering a document to make it appear that it was made by someone else; (2) by making or altering a document to make it appear to have been made at a time other than when it was actually made; (3) by making or altering a document to make it appear that it contains provisions not actually contained in the original; and (4) by making or altering a document to make it appear to have been made by authority of a person who did not give authority.

According to sections 17—3(a)(1) and 17—3(a)(2), the elements of the offense which the State sought to charge here—forgery by delivery— are as follows: (1) a document apparently capable of defrauding another; (2) a making or altering of such document by one person in such manner that it purports to have been made by another; (3) knowledge by defendant that it has been thus made; (4) knowing delivery of the document; and (5) intent to defraud.

■■ According to the defendant the information in the present case fails

to state that the document was forged, or that defendant knew it was forged and it is insufficient in that it fails to charge the second and third elements listed above. We agree.

In our opinion the statute requires both that the nature of the forgery be described and the defendant be charged with knowledge of such forgery as elements of the offense of forgery by delivery. A review of the information does not include these two elements of the offense, and indeed one of the arguments of the prosecution on this appeal is that the nature of the forgery and the knowledge thereof are not necessary elements of the offense. We do not agree with this position and we believe the statute is explicit. At this juncture it should be noted that even though the prosecution was aware of the potential problem relating to the sufficiency of the charging instrument, it elected to rely on the information without seeking any amendment.

As additional reasons for supporting the information, the prosecution suggests that on the authority of *People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244, charging an offense in the language of the statute is sufficient and furthermore by using the word "purported," forgery and knowledge thereof were charged.

So far as charging an offense in the language of the statute is concerned, we think it is sufficient to say the information does not set forth all of the elements of the offense in the language of the statute so this rule is of no support to the prosecution. *People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244, is likewise of little support for the prosecution's position since the principal issue in that case was whether the statutory language stated an offense where the statute did not include the requirement in the offense of robbery of an intention to permanently deprive the victim of his property. The court in *Banks* held that contrary to a prior inference in another case, the unexpressed element was not an essential element of the offense and therefor concluded the statute did state an offense. No issue was in fact raised in *Banks* concerning the general rule regarding the sufficiency of a charging instrument where statutory language is used.

Finally, we have reviewed various meanings of the word "purported," but we conclude that it does not in common parlance convey the meaning concerning the nature of the forged document and the defendant's knowledge thereof. In a general sense "purported" may mean not real or true, but it falls far short of referring to the elements of the offense charged.

For the foregoing reasons the judgment of the circuit court of Rock Island County is reversed.

Judgment reversed.

ALLOY and HEIPLE, JJ., concur.