THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HERBERT A. STOUT, Defendant-Appellant.

Second District   No. 81—13

Opinion filed July 28, 1982.

G. Joseph Weller and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Theodore J. Floro, State's Attorney, of Woodstock (Phyllis J. Perko, William L. Browers, and Cynthia N. Schneider, all of State's Attorney's Appel-

late Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant was tried by a jury in McHenry County for burglary of the village of Lakemoor municipal building, theft of merchandise taken in that burglary, and forgery of two checks taken in the burglary. The jury found him guilty of the two counts of forgery, counts VIII and IX in the information, and not guilty of the other charges. He appeals his conviction for the two forgeries.

We address first defendant's contention that he suffered double jeopardy when the trial directed the verdict in his favor on count IX and then reversed its decision, allowing trial on this count to continue and result in a guilty verdict.

After the State rested its case defendant moved for a directed verdict on all the charges. With respect to the forgeries defendant argues that the State failed to prove they were committed in McHenry County.

After hearing arguments from counsel for the defendant and the State the court stated that it would not direct the verdict on the burglary or theft counts nor on count VIII, one of the forgery charges, but it stated that with respect to count IX, the other forgery charge, the evidence showed the check was not completed in McHenry County but in Lake County. The court then stated the following:

"I am going to direct the verdict on Count Nine because the document was not completed in McHenry County.

* * *

*** [T]he Court will direct — enter a directed verdict of not guilty as to Count Nine.

If you wish to submit something, fine. That's up to you."

The prosecutor then asked if he could submit a motion and the court consented. Later in the day the prosecutor moved for reconsideration. The court concluded that the objection to venue was waived and stated that therefore "the directed verdict is withdrawn." Defense counsel objected to the reconsideration on the basis that the court had already ruled. The court answered,

"Well, that's perfectly all right. However, *** for the record the ruling has not been announced to the jury or anyone else at this time, so that would in no way affect the jury's consideration of this matter."

The granting of a motion to direct a verdict is an acquittal. (*People v. Hutchinson* (1975), 26 Ill. App. 3d 368, 325 N.E.2d 115; *People v. Gallas* (1966), 77 Ill. App. 2d 132, 221 N.E.2d 782.) The le-

gal effect of a directed verdict is to bar, under double jeopardy principles, its vacation or reversal. (U.S. Const., amends. V and XIV; Ill. Const. 1970, art. I, sec. 10; *Hutchinson; Gallas*.) A trial court therefore may not withdraw an order directing a verdict and permit the jury to make a finding on the charge.

The State argues that the trial court here did not direct the verdict but only stated it would do so at a later time. The court indicated it would entertain further arguments on the matter and did not intend to rule until the State had presented its argument, the State contends.

The record shows, however, that the parties and the court all considered that an order directing the verdict was made.

In *People v. Hutchinson* and *People v. Gallas*, memorandum orders were entered. In the recent decision of *In re L.R.* (1982), 106 Ill. App. 3d 244, 435 N.E.2d 908), which also held a directed verdict may not be rescinded, the reviewing court merely stated that the trial court directed the verdict, without stating whether it was recorded in a written order, or stated orally. The State argues that the oral pronouncement by the court here was insufficient to constitute a directed verdict.

Section 115—4(k) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 115—4(k)) states that when the evidence is insufficient to support a finding of guilty, "the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant."

Here, the trial court simply stated it was directing the verdict for defendant on count IX. It did not direct the jury to return a verdict, enter a judgment of acquittal nor discharge the defendant.

It was held in *People v. Gallas*, however, that a court has authority to dismiss charges without the submission of a jury instruction. "The court made the determination as a question of law and the follow-up by an instruction was a formality." (77 Ill. App. 2d 132, 140.) The lack of a direction to the jury, therefore, cannot prevent the recognition of a directed verdict. The fact that defendant here was not discharged also will not keep the court's order from having effect as a directed verdict, for trial was to continue on three other charges.

■ As for the fact that judgment of acquittal was not entered, we conclude that the validity of a court's pronouncement of a directed verdict does not depend upon whether judgment of acquittal is entered. We conclude that the announcement that the verdict is directed for defendant is sufficient to bar further prosecution against a defend-

ant. As the court in *Gallas* stated about there being no necessity to direct the jury to enter a verdict for the defendant, "[t]he court made the determination as a question of law and the followup \*\*\* was a formality." (*People v. Gallas* (1966), 77 Ill. App. 2d 132, 140.) The rendition of judgment is a judicial act, "while the entry of a judgment by the clerk is a ministerial act." (*People v. Moran* (1930), 342 Ill. 478, 480, 174 N.E. 532; *People v. Allen* (1978), 71 Ill. 2d 378, 375 N.E.2d 1283.) It was error to continue the trial with respect to count IX after the court had directed the verdict on that count in defendant's favor.

Defendant also contends that the State failed to prove beyond a reasonable doubt that the forgery charged in count VIII was committed in McHenry County.

Defendant was charged in this count with violating section 17—3(a)(1) of the Criminal Code of 1961:

"(a) A person commits forgery when, with intent to defraud, he knowingly:

(1) Makes or alters any document apparently capable of defrauding another in such manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority \*\*\*." Ill. Rev. Stat. 1979, ch. 38, par. 17—3(a)(1).

The State thus had to prove that defendant, with intent to defraud, knowingly made a document in McHenry County capable of defrauding another so that it purported to have been made by another. Defendant argues that the State did not prove he wrote the check entirely in McHenry County.

The circumstances of this forgery were related by a State's witness, Ronnie Starks. He testified that he, defendant and a companion left a house in Lakemoor, Illinois, by car. About 150 to 200 feet from the house the car in which the three were riding stopped at a stop sign. Defendant wrote the check while the car was stopped. The three then drove on about a quarter of a mile, to Fred and Irene's tavern, which is also in Lakemoor. Lakemoor is located in McHenry County.

■■ Venue may be proved by circumstantial evidence where the rational conclusion to be drawn is that the offense took place in the county alleged. *People v. Toellen* (1978), 66 Ill. App. 3d 967, 384 N.E.2d 480.

■■ The forgery was committed at a stop sign 150 to 200 feet from a Lakemoor house. Defendant was on his way to another point in Lakemoor, only a quarter of a mile away. The only rational conclusion to be drawn from this evidence is that defendant was in Lakemoor, McHenry County, the entire length of the short trip. Venue was

sufficiently proved.

Defendant next contends that the trial court abused its discretion by denying his motion *in limine* seeking to exclude from evidence Ronnie Starks' testimony that defendant had admitted the commission of prior forgeries. The testimony defendant sought to exclude was the following:

"We had brought up about the checks -- about writing them out and cashing them, and Mr. Stout told me that he had been in jail before for forgery and he said he was good. And I said, 'Well, I can't read and write so I don't think they would cash one for me.' And he says, 'Well, I will write them out if you will cash them,' and I said 'okay.' "

The trial court denied defendant's motion *in limine* reasoning that the testimony, although referring to prior felony convictions of defendant, was probative of the issue of defendant's intent and motive.

As a general rule, evidence of other crimes committed by a defendant, independent of the crime for which he is being tried, is inadmissible. Such evidence is admissible, however, if it is relevant for any purpose other than to show propensity to commit a crime. (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200.) Evidence of other crimes is admissible to show motive, intent, identity, absence of mistake or *modus operandi*. (*People v. Pavic* (1982), 104 Ill. App. 3d 436, 442, 432 N.E.2d 1074.) If the evidence of other crimes is presented to establish any issue other than defendant's propensity to commit a crime, then the trial court must determine whether the probative value of the evidence is outweighed by any prejudice to defendant. The decision to admit or exclude evidence of another crime is within the discretion of the trial court. *People v. Walls* (1980), 87 Ill. App. 3d 256, 267, 408 N.E.2d 1056.

■ In proving a forgery case, the State must establish two aspects of intent: (1) that the defendant had the intent to defraud and (2) that he knowingly performed one of the three specified acts in section 17—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 17—3(a); *People v. Hockaday* (1981), 100 Ill. App. 3d 762, 765-66, 427 N.E.2d 428). Defendant informed Starks that he had had prior experience in forging checks and that he was good. Defendant's admission to Starks that he had served time for forgery established that defendant intended to defraud the Fox Lake currency exchange and that he knowingly made a check which was apparently capable of defrauding another. Thus, the trial court did not abuse its discretion in admitting into evidence testimony that defendant had been convicted

of a prior forgery.

Defendant finally contends the trial court abused its discretion by refusing to allow a defense witness to testify. Defendant had not included the witness's name on the list of potential witnesses he had submitted to the State in compliance with discovery rules.

Following presentation of the State's evidence, defense counsel informed the court that he planned to call Ronnie Starks to the stand as a defense witness. Counsel proposed to ask Starks whether he had talked with a Ray Krahn about the burglary and theft with which the defendant was charged. If Starks denied having spoken with Krahn, defense counsel intended to call Krahn, who would testify that Starks told him that Starks, and not the defendant, had committed the burglary and theft. Counsel explained to the court that Krahn was not on the list of prospective witnesses submitted to the State because defendant had not informed him about Krahn until that morning.

The court refused to allow defense counsel to call Krahn, ruling that it would be too time-consuming for the State to conduct its investigation of Krahn at that late date, and that the defendant should have revealed Krahn's existence and significance to defense counsel sooner. The court refused to agree to counsel's request that a short continuance be granted to permit the State to investigate Krahn's background. The defense then rested without presenting any evidence.

■■ ■ Defendant argues that to refuse to permit him to call Krahn because that witness was not revealed to the State in discovery was too harsh a sanction. We conclude, however, that we need not judge whether the court made too harsh a sanction for failure to observe discovery rules, for defendant could not have called Krahn for the purpose of impeaching Starks. It is well recognized that a party calling a witness vouches for his credibility. (*People v. Grant* (1976), 38 Ill. App. 3d 62, 347 N.E.2d 244.) A party may not call a witness for the sole purpose of impeaching him. *Kubisz v. Johnson* (1975), 29 Ill. App. 3d 381, 329 N.E.2d 815.

■■ The impeachment of Starks was the stated purpose for calling Starks and Krahn. Defense counsel told the court that he expected Starks to testify that he had talked to Krahn concerning his knowledge of the burglary. Defendant then would call Krahn to testify that Starks had told Krahn a different story. Though defense counsel asked to reopen cross-examination, this was rightly denied by the trial court, and Starks would therefore have to have been called as defendant's own witness. At that point it would have been impermissible to call Starks to testify solely for the purpose of impeaching him, and

improper to call Krahn solely to give impeaching testimony. To call Krahn for this purpose, therefore, would have been improper, irrespective of discovery rules.

We conclude that the oral announcement of the directing of a verdict on count IX in defendant's favor was sufficient to bar his continued prosecution on that count. Regarding count VIII we conclude that venue was sufficiently proved. It was not error to admit testimony of defendant's prior conviction of forgery, nor did the court err in refusing to permit testimony of a witness not revealed to the State during discovery. We reverse the judgment of the McHenry County circuit court as to count IX and affirm as to count VIII.

Affirmed in part and reversed in part.

VAN DEUSEN and REINHARD, JJ., concur.