THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES R. POE, Defendant-Appellant.

Second District   No. 82—403

Opinion filed February 1, 1984.

458

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, James R. Poe, was found guilty after a jury trial of attempt murder, rape, aggravated kidnaping and armed robbery (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4, 11—1, 10—2, 18—2). He was sentenced to 50 years' imprisonment for attempt murder, 30 years for rape, 15 years for aggravated kidnaping and 30 years for armed robbery; said sentences to run concurrently. The defendant appeals, contending that the trial court erroneously excluded as hearsay critical alibi testimony, that withdrawal of previously entered directed verdicts on the charges of aggravated kidnaping and armed robbery impermissibly placed him in double jeopardy for those offenses and that his conviction for armed robbery was improper as a matter of law.

S.W., the victim, testified that on the evening of August 1, 1981, she went with the defendant and a group of others to a series of parties in Winnebago County, Illinois. At that time she had known the defendant for four years. S.W. departed the last of the three parties at approximately 1:45 a.m. and began walking toward her boyfriend's

house. As she walked down an alley, she was accosted by the defendant, who forced her into a nearby yard and raped her. The defendant ultimately took her to a wooded area and strangled her unconscious. When she regained consciousness, she found that her throat had been cut. A doctor testified that a four- to five-inch cut had been made in her throat and that she had lost a third of her blood volume. A vaginal swab and smear were taken, which tested positive for the presence of seminal material.

Pamela Thulander testified that the defendant left the last of the parties not more than five minutes after S.W.'s departure. The defendant did not appear intoxicated at the time.

The defendant was arrested at approximately 6 a.m. on August 2. He was wearing wet, blood-stained blue jeans. S.W.'s gold watch and pocket calculator were recovered from his person, along with two knives. One of the knives contained traces of human blood. Seminal material was found on the defendant's undershorts, but none was found upon laboratory analysis of S.W.'s clothing. Both the defendant and S.W. had the same blood type.

The defendant denied his guilt of these offenses. He testified that he left the last of the parties about five or 10 minutes after S.W. He had been drinking heavily and, as he walked toward his home, he knelt and was sick near a drainage ditch. He did not see S.W. leave the party, nor did he encounter her during his walk. He arrived home and was met by his mother. He placed a telephone call to Lauri Frier, his girl friend. He spoke to her for approximately 30 to 45 minutes, ending the call at about 3:15. The defendant testified that his jeans had been clean at the time he went to the first of the parties, and he denied that at the time of the arrest they were soaked through or wet as far up the legs as the arresting officer had described. The defendant carried a sheath knife virtually everywhere he went, but did not use it for cutting. The blood found on the knife might have resulted from the defendant's cutting himself the last time he had cleaned it. The blood on his pants might have gotten there during one of the parties, when a small scrape on his elbow from a fight two weeks previously began to bleed. Further, he had had sexual intercourse "maybe a day or two" before August 1 and had worn his undershorts "probably one or two" times before that date.

Clifford Keen, a friend of the defendant's, testified that the defendant left the third party 15 or 20 minutes after S.W. The defendant's mother, Bessie Phillips, testified that the defendant returned home about 2:35 on the morning of August 2. He made a phone call, made himself a pizza and went to sleep.

■ The first issue is whether the trial court committed reversible error by excluding as hearsay testimony of an alibi witness that the defendant was speaking to her on the telephone shortly after the crime.

Among the witnesses called by the defense was Lauri Frier, the defendant's girl friend. When the defense counsel sought to question her concerning a telephone conversation she had during the early hours of August 2, the State objected, challenging testimony about the details of the conversation as hearsay. The court sustained those objections, and defendant attacks the correctness of those rulings on appeal.

Miss Frier testified that she arrived home at 2 a.m. on August 2. At 2:30, shortly after she went to bed, the telephone rang in her bedroom. Her sister answered the phone, but Miss Frier then spoke to the caller. Defense counsel then asked the question, "Who was on the phone, if you know?" but the court sustained the State's objection before an answer could be given. Miss Frier was then permitted, over the State's objection, to testify that she talked to the other person on the line. Defense counsel then asked whether the person on the line identified himself or herself, and the State interposed another objection. Defense counsel made an offer of proof that the witness would testify that she talked to the defendant, and the court sustained the objection. Continuing with her testimony, Miss Frier testified that the conversation lasted 45 minutes, after which she went to sleep.

Leading commentators have summarized the evidentiary rules relating to telephone conversations as follows:

"Communications by telephone do not authenticate themselves. A mere assertion by the speaker as to his identity, being hearsay, cannot be taken as a sufficient showing of his identity. Testimony that the witness was familiar with and recognized the speaker's voice is obviously sufficient ***. The familiarity may be acquired prior to the conversation *** or afterward ***. Authenticating evidence may also be circumstantial, such as contents of the statement or the reply technique." (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 901.7, at 489 (3d ed. 1979).)

Thus, a telephone conversation may be authenticated either by direct or circumstantial evidence. (*People v. Patten* (1982), 105 Ill. App. 3d 892; see Annot., 79 A.L.R.3d 79 (1977).) However, testimony as to a telephone conversation between a witness and the accused is inadmissible in the absence of a claim by the witness that he knows the accused or could identify his voice, or in the absence of other evidence

or corroborative circumstances from which he might be identified as the person to whom the witness talked. *People v. Metcoff* (1946), 392 Ill. 418.

The instant case involves rulings by the trial court which sustained prosecution objections to two questions posed by defense counsel to an alibi witness. It is clear that Frier's testimony was not hearsay. Hearsay has been defined as follows:

" 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' " *People v. Carpenter* (1963), 28 Ill. 2d 116, 121.

■ Frier's testimony was not to be an assertion of the truth asserted therein, but mere evidence that she spoke to the defendant at a certain time. It was error for the trial court to sustain the objections to this testimony.

■ Even though we conclude that the trial court committed error in excluding Miss Frier's testimony concerning the telephone call, such error is harmless beyond a reasonable doubt. Both the defendant and his mother testified that the call was made, and the defendant specifically stated that he made a call to Lauri Frier of about 45 minutes' duration. Miss Frier's testimony, even absent her identification of the caller, that she engaged in such a conversation at approximately the time indicated provided substantial corroboration of the defendant's alibi testimony. In view of the strength of the prosecution's case, which included the virtually unimpeached eyewitness identification of the defendant, forensic evidence and the recovery from the defendant's person of property stolen from the victim, we conclude that the erroneous exclusion of testimony by Miss Frier as to the identity of her caller would have been unlikely to alter the jury's verdict. We do not regard the probative value of the physical evidence recovered from the defendant to have been markedly diminished by the fact that both S.W. and the detective principally in charge of the case testified that S.W. identified her watch and calculator while in the emergency room, a point prior to the defendant's arrest. The chronology of events (the first police officer to encounter S.W. arrived at the home where she had gone after the attack at 3:30 a.m.; the detective arrived at the hospital at 4:10 a.m.) effectively dispels the defendant's contention that the detective had an opportunity to obtain the items before interviewing S.W., and then "plant" them on the defendant.

■ The defendant next contends that the trial court erred in withdrawing directed verdicts previously entered on the charges of aggravated kidnaping and armed robbery.

At the conclusion of the case for the prosecution, the trial court granted defendant's motion for directed verdict as to the charges of aggravated kidnaping and armed robbery. The following day, the State moved for reconsideration of this ruling, and the court vacated the directed verdicts and reinstated the charges. Defendant contends on appeal that reinstatement of the charges placed him in double jeopardy for the offenses of which he had previously been acquitted. The State counters that the defendant's motion was premised upon legal theories rather than upon the sufficiency of the evidence and that, despite the terminology employed by the trial court, no directed verdicts were in fact entered in this case.

The granting of a motion to direct a verdict is an acquittal and may not be withdrawn by the trial court even if erroneous. It is, moreover, immaterial whether the directed verdict has been announced to the jury or reduced to writing. (*People v. Stout* (1982), 108 Ill. App. 3d 96.) This is true regardless of whether the court's ruling is based upon a mistake of fact or a mistake of law. (*In re L.R.* (1982), 106 Ill. App. 3d 244.) Although the State suggests that the court may look behind a directed verdict to analyze the basis upon which it is rendered and construe the order as something other than a directed verdict where it was not based upon the insufficiency of the evidence, this view involves an overly narrow reading of what constitutes a directed verdict.

The law (Ill. Rev. Stat. 1981, ch. 38, par. 115—4(k)) provides for entry of a directed verdict when "the evidence is insufficient to support a finding or verdict of guilty ***." Upon entry of a directed verdict, the court is to enter a judgment of acquittal and discharge the defendant. The view of the statute taken by the State would preclude entry of a directed verdict unless the insufficiency of the evidence related to one of the elements of the offense charged. The statutory language, however, is not limited to those situations. Entry of a directed verdict seems an appropriate remedy whenever, following the State's case or at the conclusion of all the evidence, it appears from the record that a judgment of conviction of a charge cannot stand. As long as the directed verdict is not the result of a sham trial (*cf. People v. Deems* (1980), 81 Ill. 2d 384), there seems no point in requiring that proceedings involving an insupportable charge continue to verdict. Entry of a directed verdict in such circumstances reflects a determination by the trial court based upon its evaluation of the evidence

that a judgment of conviction may not validly be entered on a charge. Such a determination is tantamount to an acquittal, and we therefore conclude that the court erred in vacating its directed verdicts as to the charges of armed robbery and aggravated kidnaping.

The defendant asserts that the trial court's error requires a new sentencing hearing on the remaining counts. He relies upon cases which, where convictions on certain counts have been vacated and others permitted to stand, have remanded for resentencing because it could not be ascertained whether or to what extent the trial court considered the vacated convictions in sentencing for the remaining counts. (*People v. Alejos* (1982), 104 Ill. App. 3d 414; *People v. Davis* (1981), 95 Ill. App. 3d 161. See also *People v. Filker* (1981), 101 Ill. App. 3d 228; *People v. Hert* (1981), 95 Ill. App. 3d 871; *People v. Walton* (1981), 94 Ill. App. 3d 903; *People v. Smith* (1980), 86 Ill. App. 3d 302.) It has elsewhere been held that a remand for resentencing is not required on the conviction which is affirmed where a separate sentence has been imposed for each offense. *People v. Donaldson* (1982), 91 Ill. 2d 164, 170-71; *People v. Buford* (1982), 110 Ill. App. 3d 46.

■ A reviewing tribunal cannot conclude, *solely* from a trial court's simultaneous imposition of separate sentences for multiple convictions, that the sentence imposed for one offense has been influenced by the conviction or sentence for another offense. Sentencing is a trial court function, and unless the record demonstrates an abuse of discretion, we will conclude that the court considered only the appropriate factors in making its sentencing determinations (*People v. Cox* (1980), 82 Ill. 2d 268, 280; *People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93). Since there is no evidence in the record suggesting that the defendant's remaining sentences were improperly affected by his separate additional convictions and sentences, we will not remand his remaining convictions for sentencing. *People v. Martin* (1984), 121 Ill. App. 3d 196; *People v. Einstein* (1982), 106 Ill. App. 3d 526, 535.

The defendant did not establish on the basis of the record that the trial court was influenced in passing sentence by the existence of a conviction for another offense which has been set aside upon review. (*People v. Miles* (1981), 96 Ill. App. 3d 721; *People v. Myers* (1980), 83 Ill. App. 3d 1073.) Since in the instant case separate sentences were imposed for each offense and since the record fails to disclose that the sentences for attempt murder and rape were influenced by the findings of guilty of the other offenses, we conclude that remand for resentencing is unnecessary.

Lastly, the defendant contends his conviction for armed robbery

464

must be reversed because the prosecution failed to prove that the use of force was contemporaneous with the taking of the property.

In light of our disposition of the second issue, we need not address this issue.

For the reasons stated, the judgment of the circuit court of Winnebago County which found the defendant guilty of the offenses of attempt murder and rape and imposed sentences for those offenses is affirmed; the convictions and sentences for the offenses of aggravated kidnaping and armed robbery are reversed.

Affirmed in part; reversed in part.

SEIDENFELD, P.J., and VAN DEUSEN, J., concur.