Docket No. 85823–Agenda 5–January 1999.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TRACY WILLIAMS, Appellant.

Opinion filed October 21, 1999.

JUSTICE BILANDIC delivered the opinion of the court:

The issue in this case is whether the trial court’s statements in response to defendant’s motion for a directed finding of not guilty amounted to an acquittal for double jeopardy purposes. We hold that these statements did not constitute an acquittal.

FACTS

Defendant, Tracy Williams, and codefendant, Jamal Crumble, were charged with first degree murder (720 ILCS 5/9–1 (West 1992)) and armed robbery (720 ILCS 5/18–2 (West 1992)). These charges arose out of the December 27, 1993, murder of Thomas Yednak. Defendant’s case was severed from his codefendant’s case, and defendant waived his right to a jury trial.

Theresa Yednak testified at trial that her husband, Thomas Yednak, received a pager message on the morning of December 27, 1993. Because Thomas was sleeping at this time, Theresa returned the call and spoke with someone. When Thomas awoke, he too called the number which appeared on the pager and spoke with someone. Theresa’s testimony reveals no information regarding the contents of these conversations. Thomas left for work at approximately 4 p.m. that day, and he told Theresa that he was first going to 87th Street and the Dan Ryan Expressway. When Thomas did not call Theresa from work, as was customary, Theresa called Thomas’ employer and learned that he had not arrived. Theresa asked to talk to defendant, who worked with Thomas. Defendant did not provide any information to Theresa regarding the whereabouts of Thomas. At approximately 11 p.m. that night, Chicago Police Detectives James Butler and Michael Kill came to Theresa’s home and told her that her husband had been killed. Theresa told the detectives about the pager call, and that she had spoken to defendant, who worked with her husband.

Detective Butler testified that, on December 27, 1993, he and Detective Kill investigated a shooting at 521 West 91st Street in Chicago. At 8:30 p.m., the detectives observed the victim in the driver’s seat of his car. The victim was slumped over toward the passenger side with a gunshot wound in the back of his head. The detectives found a bullet casing on the driver’s seat.

Assistant State’s Attorney Kelly Bolan-Chevalier testified that on December 28, 1993, she took a statement from defendant. Defendant stated that he and the victim worked at the same company. About one week before the crimes at issue occurred, codefendant Jamal Crumbell told defendant that he wanted to sell a minicamera. In response, defendant gave Jamal the victim’s pager number. According to defendant, on December 27, 1993, defendant drove Jamal to a grocery store parking lot near 87th Street and the Dan Ryan Expressway where they met the victim at about 4 p.m. Defendant and Jamal, followed by the victim in his car, drove to a side street near 91st Street. At this point, defendant and Jamal got out of defendant’s car and walked to the victim’s car. Defendant sat in the passenger seat of the victim’s car, and Jamal sat in the back seat, behind the victim.

According to defendant, Jamal requested $500 for the minicamera; however, the victim wanted to pay for the minicamera with marijuana and cocaine. Consequently, Jamal and the victim argued about the terms of the transaction. The victim then grabbed Jamal by the coat, and Jamal punched the victim in the face. At this point, defendant pushed the victim against the driver’s side door of the car, and defendant and the victim began to punch each other. Jamal pointed a silver semiautomatic handgun at the back of the victim’s head and fired a single shot. The victim’s body slumped over the front seat. Defendant took $20 from the victim’s lap and then drove to work.

Sharon Quinn testified that at approximately 9 p.m. on December 27, 1993, Jamal came to her home at 9036 South Laflin, handed Sharon a black duffel bag, and told her to give the bag to her “brother.” Defendant was Sharon’s cousin. Sharon placed the bag in the dining room without opening it and went to sleep. The next morning, at 9 a.m., two police officers came to Sharon’s home, and Sharon showed the officers the bag. The police officers recovered a gun, marijuana, and blue jeans from the bag.

Chicago Police Detective Thomas Byron went to Sharon Quinn’s home at 9 a.m. on December 28, 1993. According to Detective Byron, the duffel bag recovered from Sharon’s home contained a Greyhound bus ticket in Jamal’s name, a plastic bag containing green crushed plants, a plastic bag containing white powder, clothes, a small semiautomatic pistol, and two .25-caliber bullets.

The parties stipulated that pathologist Dr. Lawrence Cogan would testify that the cause of the victim’s death was a single gunshot wound to the back of the head, inflicted from a distance of one inch. The parties also stipulated that Chicago police department firearms examiner Robert Smith would testify that the bullet removed from the victim’s body during the autopsy was fired from the .25-caliber pistol recovered from the duffel bag in Sharon Quinn’s home.

At the close of the State’s case in chief, defendant moved for a directed finding of not guilty on both charges. See 725 ILCS 5/115–4(k) (West 1992). Following argument on the motion from both parties, the trial court stated:

“I simply cannot find based on the evidence that’s presented to me that the State even in the light most favorable to the State has met a 
prima facie
 case at this juncture, so I’m going to grant the motion for a directed finding and finding of not guilty as to the armed robbery as well because I believe it would have to be established that that–that there was an intention to do that prior to the killing and I don’t find that he participated in that. I find that–I believe that the evidence established that he did not know until the gun was produced what occurred. I do not see he was–I don’t see that he profited other than the $20. He didn’t participate as far as taking the drugs. We don’t have him taking anything anywhere. We do not have him–his name is not on the bus ticket. There’s nothing to indicate that the gun belonged to him or that there was any participation in the weapon. I don’t think that that would be appropriate where there’s nothing that’s established to show that there was any kind of conspiracy prior to the act if something is taken after the act. Now, if you want to provide me with something, I’ll be happy to look at it if you want me to hold that in abeyance but I don’t think that it’s established.”

The prosecutor responded: “Judge, if you would hold that particular portion of the ruling in abeyance, we would ask for a date.” The trial court paused for a moment and reviewed a copy of the charges against defendant. The trial court then stated:

“All right. There’s a finding of not guilty as to the charges of murder. As to the armed robbery charge, I am more than willing to look at any authority. How long would it take for you to get something to me on that issue because I am–be clear that I am making a finding that he did not aid or abet, that he did not know what was happening as far as the murder was concerned until it was already accomplished. I’m making that finding based on the evidence I’ve received.”

The prosecutor stated that he understood, and the trial court reiterated that “the issue is if he then took the money is that an armed robbery. I don’t believe that it is.” The parties agreed with the trial court that the matter would be held until the next day.

The following day, the trial court stated:

“We were at the end of the trial yesterday, the [c]ourt had ruled with respect to the [m]urder counts. There was a question as to the armed robbery count. The [c]ourt expressed its belief that, based upon the [c]ourt’s findings of the facts, the armed robbery charge would be inappropriate, but we put it over to today’s date for the parties to supply any authority.”

The State presented authority as to whether taking money from the victim constituted an armed robbery. Following argument from both parties, the trial court denied defendant’s motion for a directed finding as to the armed robbery charge. The State presented no further evidence, and the defense rested. Following closing arguments, the trial court found defendant guilty of armed robbery. The trial court sentenced defendant to a term of 17 years’ imprisonment.

The appellate court affirmed defendant’s conviction and sentence. No. 1–96–4394 (unpublished order under Supreme Court Rule 23). We allowed defendant’s petition for leave to appeal (177 Ill. 2d R. 315). We now affirm the judgment of the appellate court.

ANALYSIS

Defendant contends that the trial court unequivocally granted his motion for a directed finding of not guilty on the armed robbery charge. According to defendant, this directed finding of not guilty constituted an acquittal, and double jeopardy therefore prohibited the State from continuing its prosecution against defendant.

The double jeopardy clause of the fifth amendment to the United States Constitution provides that no person shall “be subject for the same offence to be twice put in jeopardy of life or limb.” Likewise, article I, section 10, of the Illinois Constitution of 1970 provides that no person shall “be twice put in jeopardy for the same offense.” These prohibitions against double jeopardy mean, among other things, that a defendant may not be prosecuted for an offense if the defendant has already been acquitted of the same offense. 
United States v. Dixon
, 509 U.S. 688, 695-96, 125 L. Ed. 2d 556, 567, 113 S. Ct. 2849, 2855 (1993); 
People v. Placek
, 184 Ill. 2d 370, 376 (1998). A judgment of acquittal triggers double jeopardy protection when it “ ‘actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.’ ” 
People ex rel. Daley v. Crilly
, 108 Ill. 2d 301, 311 (1985), quoting 
United States v. Martin Linen Supply Co.
, 430 U.S. 564, 571, 51 L. Ed. 2d 642, 651, 97 S. Ct. 1349, 1355 (1977).

A directed verdict constitutes an acquittal for double jeopardy purposes when it is based on insufficiency of the evidence. See 
Smalis v. Pennsylvania
, 476 U.S. 140, 144-46, 90 L. Ed. 2d 116, 121-22, 106 S. Ct. 1745, 1748-49 (1986); 
Crilly
, 108 Ill. 2d at 311-12. This is the rule regardless of whether the trial court’s ruling was based upon a mistake of fact or law. 
People v. Poe
, 121 Ill. App. 3d 457, 462 (1984); see also 
Fong Foo v. United States
, 369 U.S. 141, 143, 7 L. Ed. 2d 629, 631, 82 S. Ct. 671, 672 (1962). Thus, reconsideration and vacation of an order directing a verdict of not guilty exposes a criminal defendant to further proceedings for resolving the factual elements of the offense in violation of double jeopardy principles. 
People v. Mink
, 141 Ill. 2d 163, 179 (1990).

The State contends that defendant waived his argument by failing to object on double jeopardy grounds at trial, and by failing to raise the issue in his post-trial motion. See 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988). We note, however, that waiver is a limitation on the parties, not the court, and the goal of maintaining a sound body of precedent may override considerations of waiver. See 
People v. Farmer
, 165 Ill. 2d 194, 200 (1995); 
People v. Bailey
, 159 Ill. 2d 498, 506 (1994). For this reason, relaxation of the waiver rule is appropriate in this case. We therefore address the merits of defendant’s double jeopardy argument.

At issue in this case is not the effect of a directed finding of not guilty, but rather, whether the trial court in fact directed this finding. We hold that the trial court did not unequivocally grant defendant’s motion for a directed finding of not guilty on the armed robbery charge.

Defendant relies upon the trial judge’s statement that she “[is] going to grant the motion for a directed finding and finding of not guilty as to the armed robbery as well,” when responding to defendant’s motion for a directed finding. Nevertheless, a review of the trial judge’s entire response to defendant’s motion reveals that the trial judge did not grant defendant’s motion as to the armed robbery charge, but rather, postponed ruling on this portion of the motion until the State presented legal authority. Just a few moments after indicating that she would grant defendant’s motion, the trial judge showed that she was not yet prepared to rule on the motion by stating that “if you want to provide me with something, I’ll be happy to look at it if you want me to hold that in abeyance.” After the State responded that it would like this portion of the ruling held in abeyance, the trial judge again discussed the evidence and indicated that she needed to review legal authority in order to determine whether, according to the evidence presented, defendant committed the crime of armed robbery. At this point, the trial judge stated that she was “more than willing to look at any authority.” The trial judge then repeatedly remarked that she did not yet know whether the applicable legal authority supported a finding of not guilty as to the armed robbery charge. Thus, the record as a whole discloses that the trial judge conveyed to the parties that she would wait to review any legal authority presented by the State before ruling on defendant’s motion for a directed finding of not guilty as to the armed robbery charge.

This case is analogous to 
People v. Vilt
, 119 Ill. App. 3d 832 (1983). In 
Vilt
, the defendant was charged with rape, aggravated kidnaping, and two counts of deviate sexual assault. One count of deviate sexual assault charged that the defendant sodomized the victim. In addition to the victim’s testimony, the State presented the testimony of a woman whom the defendant had previously assaulted. At the close of the State’s case, the defendant moved for a directed verdict on the count charging deviate sexual assault based on the act of sodomy. The following colloquy ensued:

“ ‘THE COURT: That motion will be allowed.

MR. GERTS (The assistant State’s Attorney): May I ask why?

THE COURT: Wasn’t any evidence of anal sodomy.

MR. GERTS: I think she testified that–Theresa testified of the contact.

THE COURT: Or am I thinking, am I thinking of the other girl?

MR. GERTS: Tami George there was no anal act with.

THE COURT: I am sorry, I am sorry, I am talking, I am thinking of Tami George, that is right.

MR. GERTS: Tami was in the dress.

THE COURT: That motion will be denied.

MR. KIELIAN [defense counsel]: Could I be–

THE COURT: Yes you may be heard on it but I am sorry, I had the wrong, the wrong cases.’ ” 
Vilt
, 119 Ill. App. 3d at 833-34.

The defendant was later convicted of one count of deviate sexual assault. The defendant filed a post-trial motion to vacate the judgment. The trial court granted the motion on the basis that the defendant’s conviction violated double jeopardy. 
Vilt
, 119 Ill. App. 3d at 834.

The appellate court in 
Vilt
 reversed, holding that, because the trial court allowed but then denied the motion for a directed verdict “virtually with the same breath,” the defendant was never acquitted of the charge of deviate sexual assault. 
Vilt
, 119 Ill. App. 3d at 835. Although the trial court stated that it would allow the defendant’s motion for a directed verdict, it immediately reversed itself and denied the motion when it realized that it had confused the facts of the case. Therefore, because the defendant was never acquitted of the charge, the defendant’s subsequent conviction did not place him in double jeopardy. 
Vilt
, 119 Ill. App. 3d at 835.

Likewise, here, the trial judge stated that she would grant defendant’s motion for a directed finding of not guilty on the armed robbery charge, but then immediately agreed to postpone ruling on the motion until the State presented legal authority. Consequently, defendant was never acquitted of the armed robbery charge, and his conviction for armed robbery, therefore, did not place him in double jeopardy.

Defendant nonetheless claims that the trial court’s statements amounted to a directed finding of not guilty on the armed robbery charge. In support of this argument, defendant relies upon 
People v. Brown
, 227 Ill. App. 3d 795 (1992), and 
People v. Stout
, 108 Ill. App. 3d 96 (1982).

In 
Brown
, the defendant was charged with possession of a controlled substance with intent to deliver and with armed violence based on the possession of a controlled substance with intent to deliver. When the State rested, the defendant moved for a directed verdict. In ruling on the motion, the trial court stated:

“ ‘Based on a half a gram of cocaine, the [c]ourt is asked to find that the [d]efendant possessed with intent to deliver. No other evidence, either circumstantial or otherwise[,] other than [what] I have recited *** aids the [c]ourt in reaching that conclusion [when] the evidence is viewed in the light most favorable to the State. Thus, the [c]ourt cannot find that the [d]efendant possessed cocaine with intent to deliver and as to that charge, the [d]efendant is found not guilty of the greater offense of possession with intent to deliver. Count 1 of the [information] charges the offense of armed violence in that the [d]efendant, while committing the offense of possession of a controlled substance with intent to deliver[,] was armed with a dangerous weapon. Having found the [d]efendant not guilty of the offense of possession with intent to deliver[,] it follows that he was not armed with a dangerous weapon while committing that offense, and the [d]efendant is found not guilty of Count 1.’ ” (Emphasis omitted.) 
Brown
, 227 Ill. App. 3d at 796.

The State argued that, even though the trial court found the defendant not guilty of possession with intent to deliver, the armed violence charge could be based on the lesser-included offense of possession. The trial judge agreed and denied defendant’s motion for a directed verdict on the armed violence charge. The trial continued, and defendant ultimately was convicted of possession of a controlled substance and armed violence based on possession of a controlled substance. 
Brown
, 227 Ill. App. 3d at 797.

The appellate court reversed the defendant’s conviction for armed violence, reasoning that the trial court’s grant of the defendant’s motion for a directed verdict on the armed violence charge was “not equivocal.” 
Brown
, 227 Ill. App. 3d at 799. Rather, the trial court found that there was insufficient evidence of armed violence and, therefore, the defendant was not guilty of this offense. This ruling resolved some of the factual elements of the offense in the defendant’s favor. Consequently, the ruling was an acquittal based on insufficient evidence, which the trial judge could not reconsider. 
Brown
, 227 Ill. App. 3d at 799.

Similarly, in
 Stout
, the defendant was charged with burglary, theft, and two counts of forgery. After the State rested its case, the defendant moved for a directed verdict on all of the charges. With respect to the forgeries, the defendant argued that the State failed to prove that they were committed in McHenry County. The trial court denied the directed verdict with respect to the burglary, theft, and one count of forgery. 
Stout
, 108 Ill. App. 3d at 98. As to the other forgery charge, however, the trial court stated: “ ‘I am going to direct the verdict on Count Nine because the document was not completed in McHenry County. *** [T]he [c]ourt will direct–enter a directed verdict of not guilty as to Count Nine. If you wish to submit something, fine. That’s up to you.’ ” 
Stout
, 108 Ill. App. 3d at 98. The prosecutor asked if he could submit a motion, and the trial court consented. Later in the day, the prosecutor filed a motion for reconsideration. The trial court allowed the motion, finding that the defendant had waived his objection to venue. The trial court then stated that “ ‘the directed verdict is withdrawn.’ ” 
Stout
, 108 Ill. App. 3d at 98. Defense counsel objected to the reconsideration on the basis that the trial court had already directed a verdict in the defendant’s favor. The trial court responded: “ ‘Well, that’s perfectly all right. However, *** for the record the ruling has not been announced to the jury or anyone else at this time, so that would in no way affect the jury’s consideration of this matter.’ ” 
Stout
, 108 Ill. App. 3d at 98. The defendant was convicted of two counts of forgery. 
Stout
, 108 Ill. App. 3d at 98.

The appellate court reversed, holding that the trial court’s oral pronouncement directed a verdict for defendant. This directed verdict barred further prosecution and could not be withdrawn. 
Stout
, 108 Ill. App. 3d at 98-100. Further, the record showed that the trial court and the parties all acted in accordance with the belief that the trial court had entered an order directing the verdict. 
Stout
, 108 Ill. App. 3d at 99.

Defendant’s reliance on 
Brown
 and 
Stout
 is misplaced. Defendant’s case differs from these cases in a critical respect, 
i.e.
, the trial court here did not in fact grant defendant’s motion for a directed finding of not guilty. Because the trial court did not grant defendant’s motion for a directed finding of not guilty, it also did not reconsider, withdraw, or vacate its ruling, as did the trial courts in 
Brown
 and 
Stout
. There simply was no final ruling here to reconsider, withdraw, or vacate. Rather, the trial judge discussed the evidence and indicated that she needed to review legal authority in order to determine whether, according to the evidence presented, defendant committed the crime of armed robbery. The trial judge’s statements were equivocal and amounted merely to a determination to hold the ruling on defendant’s motion in abeyance until the following day.

The proceedings the following day further evidence that the trial court never granted defendant’s motion as to the armed robbery charge. The trial court stated:

“We were at the end of the trial yesterday, the [c]ourt had ruled with respect to the [m]urder counts. There was a question as to the armed robbery count. The [c]ourt expressed its belief that, based upon the [c]ourt’s findings of the facts, the armed robbery charge would be inappropriate, but we put it over to today’s date for the parties to supply any authority.”

The State presented additional authority, and, following argument from both parties, the trial court denied defendant’s motion for a directed finding as to the armed robbery charge. Thus, the record reveals that the trial court, as well as the parties, all acted in accordance with the belief that the trial court had not entered an order directing a finding of not guilty as to the armed robbery charge.

The cornerstone of the double jeopardy clause is “that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.” 
Green v. United States
, 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223 (1957). These concerns are not implicated in this case. Defendant was not subjected to the harassment of successive prosecutions. The trial court did not postpone its ruling so that the State could present additional evidence of defendant’s guilt. Rather, the trial court postponed its ruling so that the State could provide the trial court with legal authority.

CONCLUSION

The trial court did not grant defendant’s motion for a directed finding of not guilty as to the armed robbery charge. Therefore, defendant’s conviction for armed robbery did not place him in double jeopardy. Consequently, we affirm the judgment of the appellate court, which affirmed the judgment of the trial court.

Affirmed
.

JUSTICE HARRISON, dissenting:

I cannot understand the majority’s contention that the trial court did not, in fact, direct a finding of not guilty on the armed robbery charge. The trial judge clearly stated on the record that she was granting defendant’s motion for a directed finding as to the armed robbery charge as well as to the charge of murder. Her remarks could not have been more straightforward. She specifically said:

“I simply cannot find based on the evidence that’s presented to me that the State even in the light most favorable to the State has met a 
prima facie
 case at this juncture so I’m going to grant the motion for a directed finding and finding of not guilty as to the armed robbery charge as well ***.”

That this ruling constituted a directed finding of not guilty was certainly clear to the parties at the time of trial. Indeed, its effect as a directed finding is precisely why the State moved to have it stayed pending further hearing. If the ruling did not constitute a directed finding and was not intended to constitute a directed finding, there would have been no need for the ensuing discussion between the State and the trial court as to whether the ruling should be held “in abeyance.” Accordingly, the real issue in this case is not whether there was a directed finding of not guilty. The real issue is whether double jeopardy considerations should have barred the trial court from subsequently reversing its position and finding defendant guilty.

As the majority correctly notes, the prohibitions against double jeopardy mean, 
inter alia
, that a defendant may not be prosecuted for an offense if he has already been acquitted for the same offense. 
People v. Flowers
, 138 Ill. 2d 218, 231 (1990). The statutory form of this rule is set out in section 3–4(a)(1) of the Criminal Code of 1961, which provides that

“(a) A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if such former prosecution:

(1) Resulted in either a conviction or an acquittal or in a determination that the evidence was insufficient to warrant a conviction.” 720 ILCS 5/3–4(a)(1) (West 1992).

What constitutes an acquittal for double jeopardy purposes is not necessarily controlled by the form of the judge’s action or what the judge calls it. 
People v. Rudi
, 103 Ill. 2d 216, 224 (1984). A directed finding of not guilty will qualify as an acquittal for double jeopardy purposes when there was insufficient evidence to establish as a matter of law some or all of the essential elements of the crime. 
People ex rel. Daley v. Crilly
, 108 Ill. 2d 301, 311-12, (1985).

If the defendant moves for a directed verdict or finding at the close of the State’s evidence, as the defendant here did, and the evidence is insufficient to support a finding of guilty, as the trial court here determined it was, the law expressly mandates that the court “shall make a finding or direct the jury to return a verdict of not guilty.” 725 ILCS 5/115–4(k) (West 1992). The trial court has no authority to grant the defendant’s motion, find him not guilty, then change its mind. Allowing reconsideration of a directed finding of not guilty based on insufficiency of the evidence is analogous to permitting the State to reopen its case following an acquittal by the jury or to appeal from a judgment of acquittal following a trial on the merits. Both are clearly improper. Accordingly, once a trial judge makes a directed finding based on the insufficiency of the evidence, double jeopardy prohibits him from rescinding the ruling and reinstating the charge. See
 People v. Brown
, 227 Ill. App. 3d 795, 796-99 (1992). That is so even if the judge’s decision was based on a factual error or a mistake regarding the law.
 
See
 People v. Poe
, 121 Ill. App. 3d 457, 462 (1984). Where the court makes a directed finding of not guilty, but later attempts to vacate that finding and reinstate the charges, any conviction that results is constitutionally infirm and must be reversed. See
 Brown
, 227 Ill. App. 3d 795;
 People v. Strong
, 129 Ill. App. 3d 427 (1984); 
People v. Stout
, 108 Ill. App. 3d 96 (1982); 
People v. Hutchinson
, 26 Ill. App. 3d 368 (1975).

There is no question that the trial court’s directed finding of not guilty in this case was based on the insufficiency of the evidence. As a matter of law, the judge’s decision therefore constituted an acquittal. Although the judge did not reduce her decision to writing, that was not necessary in order to trigger double jeopardy protections. An acquittal based on a directed finding of not guilty becomes effective when announced by the trial judge. Its validity does not depend upon whether a formal written judgment of acquittal is entered later. 
Stout
, 108 Ill. App. 3d at 99-100.

Contrary to the majority, I do not believe that the actions taken by the trial judge after making her directed finding should be allowed to alter the legal effect of the court’s pronouncement. The situation here is directly analogous to 
People v. Stout
, which our court has previously cited with approval (see 
People v. Mink
, 141 Ill. 2d 163, 179 (1990)). In 
Stout
, as in this case, the trial judge entered a directed verdict of not guilty, but then advised the State: “If you wish to submit something, fine. That’s up to you.” The prosecutor then asked if he could submit a motion, and the court consented. Later in the day, the prosecutor filed a motion for reconsideration. That motion was allowed, and the directed verdict was withdrawn. On appeal, however, the appellate court reversed. It held that the trial court’s oral pronouncement directing a verdict for defendant barred further prosecution and that the trial court was prohibited from withdrawing its order directing a verdict.
 Stout
, 108 Ill. App. 3d at 99.

The same conclusion was reached in 
People v. Brown
, 227 Ill. App. 3d 795 (1992), and
 People v. Hutchinson
, 26 Ill. App. 3d 368 (1975), on similar facts. In
 Brown
 the trial court granted defendant’s motion for a directed verdict. Once the court announced that defendant was not guilty, however, the State contended that the judge had made a mistake. The court promptly rescinded its order, changed its position, and denied the motion for a directed verdict. Defendant appealed, and the appellate court reversed. It held that the trial judge’s statement that defendant was not guilty was not equivocal, and because it was based on the insufficiency of the evidence, it could not be undone by the State’s subsequent claim of mistake. 
Brown
, 227 Ill. App. 3d at 799.

In 
Hutchinson
, the circuit court granted the defendant’s motion for a directed verdict at the conclusion of the State’s case, holding that an essential element of the case had not been established. The State asked for leave to reopen its proofs and sought a continuance. The court agreed to the continuance, delayed discharging the jury, and scheduled a hearing for the following day. At that hearing, the court announced that it had made a mistake. It therefore vacated its prior order and ruled that it would not grant a directed verdict.

As in 
Stout 
and
 Brown
, the appellate court reversed. It ruled that once the trial court dismissed the charges, double jeopardy precluded it from reinstating those charges. That was so even though the jury had not yet been discharged. In addition, the court rejected the State’s claim that the original order directing the verdict had, in effect, been suspended pending the hearing the following day. The appellate court ruled that the original order was decisive and that the circuit court’s attempted recission was a nullity. 
Hutchinson
, 26 Ill. App. 3d at 370.

In urging a different result here, the State relies on 
People v. Vilt
, 119 Ill. App. 3d 832 (1983). In 
Vilt
, the trial judge indicated he would allow a motion for a directed verdict, but immediately reversed his position and denied the motion when he realized that he had gotten the facts of the case confused. The defendant was subsequently convicted. He then filed a post-trial motion arguing,
 inter alia
, that the conviction should be vacated on double jeopardy grounds. The circuit court agreed and vacated the conviction.

The State appealed. The appellate court reversed. It held that because the trial court allowed then denied the motion for a directed verdict “virtually with the same breath,” the defendant was never really acquitted of the offense. Because there was no acquittal, the court reasoned, defendant’s subsequent conviction “did not have the effect of placing the defendant in jeopardy a second time.” 
Vilt
, 119 Ill. App. 3d at 835.

Although the appellate court in the present case was persuaded by the 
Vilt
 decision, it is inapposite. Unlike 
Vilt
, the case before us does not involve a situation where the trial court corrected itself immediately and “virtually with the same breath.” Here, as in
 Stout
, 
Brown
 and 
Hutchinson
, the court clearly and specifically directed a finding of not guilty based on the insufficiency of the evidence. Only after making that unequivocal finding and discussing the facts in greater detail did the court suggest that it might be willing to reconsider its position. Even then, the court did not attempt to qualify or condition its decision. It merely stated that it would be willing to consider additional authority. In contrast to 
Vilt
, the court did not actually rescind its directed finding until another hearing was held the following day.

In assessing the effect of the trial court’s ruling here, the appellate court also took into account that defense counsel did not object to the trial court’s offer to entertain additional authority at a subsequent hearing. Although the appellate court was correct that no objection was made, the absence of an objection is not relevant to the double jeopardy analysis. It was the trial court’s initial ruling, not counsel’s reaction to what followed, that triggered defendant’s double jeopardy rights. Defendant was acquitted, as a matter of law, as soon as the trial judge announced her directed finding of not guilty based on the insufficiency of the evidence. That being so, no additional action by counsel was necessary to give the directed finding effect for double jeopardy purposes.

Finally, the State urges us to uphold the circuit court’s actions on public policy grounds. The State contends that we should encourage judges to “make the absolutely correct decision” and that we should not “chill the efforts of conscientious judges who are unsure about the law or the facts and who wish to be certain before making a final decision.”

The sentiments expressed by the State are sound. “The citizens of the State of Illinois deserve accurate legal determinations by the judiciary,” as the State asserts, and our court has previously acknowledged the public’s strong interest in the accuracy of the results of criminal prosecutions (
People v. Franklin
, 167 Ill. 2d 1, 14 (1995)). The State must remember, however, that our criminal justice system and constitution protect other values in addition to the reliability of the guilt or innocence determination. Our system is accusatorial, rather than inquisitorial, and it affords defendants broad protections that do not have accuracy of truth-finding as their primary goal. 
Sawyer v. Whitley
, 505 U.S. 333, 356, 120 L. Ed. 2d 269, 291, 112 S. Ct. 2514, 2528 (1992) (Blackmun, J., concurring). These protections must be heeded even if it means that the accuracy of adjudication might sometimes be diminished.

I note, moreover, that the State’s concern that a ruling against it here will “foster hasty, incorrect and unjust decisions” is unfounded. Upholding the principle that judges may not rescind a directed finding of not guilty based on insufficiency of the evidence should improve the quality of justice rather than diminish it. If judges are held to the consequences of their pronouncements regarding guilt or innocence, as our appellate court has long recognized they should be, they are apt to be more thorough and deliberate in issuing their rulings, not less.

For the foregoing reasons, I would hold that the trial judge’s directed finding of not guilty at the close of the State’s case was sufficient to bar the continued prosecution of defendant for armed robbery. I would further hold that the trial court’s attempt to rescind that directed finding was a nullity. The judgment of the appellate court affirming defendant’s armed robbery conviction should therefore be reversed.

JUSTICE HEIPLE joins in this dissent.