2021 IL App (1st) 180207-U
March 31,2021

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1)

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court |
| | ) | Of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17 CR 5704 |
| | ) | |
| THOMAS LENOIR, | ) | The Honorable |
| | ) | Vincent M. Gaughan |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Pierce and Coghlan concurred in the judgment.

**ORDER**

¶ 1     *Held*: The evidence was insufficient to satisfy the State's burden of proof beyond a reasonable doubt the defendant had knowledge that vehicle was stolen.

¶ 2     Defendant Thomas Lenoir was convicted of possession of a stolen motor vehicle following a jury trial and sentenced to eight years and six months in the Illinois Department of Corrections. The circuit court sentenced Lenoir as a Class X offender because of two prior convictions, including a conviction for murder and armed robbery when Lenoir was 15 years old. Lenoir appeals arguing that the State failed to prove beyond a reasonable doubt that he

was guilty of possession of a stolen motor vehicle, and that he should not have been sentenced as a Class X offender. Lenoir contends that his convictions as a 15-year-old would now be under the jurisdiction of the juvenile court and not subject to criminal laws. For the following reasons, we reverse.

¶ 3                                BACKGROUND

¶ 4       At Lenoir's jury trial, only Tracey Johnson, the owner of the car, and Officer Nicolas Morales, the officer who arrested Lenoir, testified. The following evidence was adduced at trial.

¶ 5       Johnson, who was 30 years old at the time of trial and a mother of two children, had been friends with Lenoir for about 10 years. Johnson lived with her mother at 930 North Lavergne on the west side of Chicago. Lenoir lived on the south side, at 64th Street and California Avenue.  Johnson testified that she worked in Elk Grove, Illinois and paid a co-worker $40 a week to drive her to work because she did not have a valid driver's license. At Lenoir's urging, Johnson bought a 2002 Infiniti on March 8, 2017 so that other people, including Lenoir, could drive her children to school and drive her to work.  Johnson testified that whenever Lenoir drove the car, she went with him.

¶ 6       On March 12, 2017, at around 6 p.m., Lenoir was driving Johnson from his house to her mother's house when the police pulled the car over because its tinted windows. Johnson testified that although she was seated in the passenger seat, the police ran her name and learned that she had an outstanding traffic warrant and placed her under arrest. Johnson testified that when she was placed under arrest, Lenoir "was supposed to take the car back to my mother's house. The car and my belongings that I had on me during that time." Johnson also stated that

2

Lenoir was to "take everything, my belongings in my car, to my mom's house." Johnson testified that Lenoir was "not allowed to drive [her] car anywhere else," however she did not testify that she told this to Lenoir.

¶ 7        On March 17, 2017, Johnson was released from jail. She took went to her mother's house and discovered that her car was not there. Johnson testified that she went to Lenoir's house the following day, but she did not see the car. She tried to contact him over a period of two weeks, going to his house "over five times" or "more than ten times," and tried to call him "three or four times," but was unable to contact him.

¶ 8        Johnson testified that she saw Lenoir one of the times she went to his house. She saw her car parked outside his house and Lenoir came downstairs after she saw him on the balcony. Johnson testified that she spoke to Lenoir briefly, but then he drove away in the car. She did not testify that she told Lenoir she wanted her car back.

¶ 9        Following this encounter, Johnson called the police and told them that her car was parked in front of Lenoir's house, but he had "just left in the car." Johnson stated that the police told her to go to the station and file a report. Johnson testified she reported her car stolen on March 25, 2017 and named Lenoir as the person who had the car.

¶ 10       On April 3, 2017, Lenoir was arrested. Johnson testified she received a voicemail message from the police but never spoke to the police officer that left the message and denied ever hanging up on the officer. Johnson testified that she learned from Lenoir's wife that the car had been recovered by the police, impounded, and that Lenoir had been arrested for possessing the car. Lenoir's wife and her boyfriend then took Johnson to get the car from the police impound.

¶ 11    Officer Morales testified that he was driving with his partner in a marked squad car on April 3, 2017, at around 4:45 p.m., when he saw a white Infiniti parked in the alley behind 7030 South Maplewood. Officer Morales testified that the engine was running, and the doors were unlocked, but no one was inside. Officer Morales's partner ran the license plates through the Law Enforcement Agencies Data System ("LEADS") system.

¶ 12    Officer Morales testified that while he was at the car, Lenoir approached and said that it was his car and he would move it because he did not want a ticket. Officer Morales asked Lenoir, "this is your car" to which Lenoir responded, "yeah, yeah, I'll move it." Officer Morales's partner got out of the car and they placed Lenoir in handcuffs. Officer Morales' partner informed him that the car had been reported stolen. Officer Morales obtained independent confirmation of the car's status. Officer Morales testified that Lenoir then told him that the car was not actually his, but he knew who it belonged to. In the arrest report, Officer Morales wrote that Lenoir told him "he had possession of the vehicle because [its owner] was in jail."

¶ 13    After bringing Lenoir and the car back to the station, Officer Morales looked up the report on the car to contact the registered owner, who he learned was Johnson. Officer Morales testified that he called Johnson and left a message indicating that he had recovered her car. The next day someone called Officer Morales claiming to be Johnson. When Officer Morales asked the woman "how she actually knew the offender" she responded that all the information he needed was in her report and then abruptly hung up the phone. Officer Morales testified that he did not ask whether Lenoir had permission to use the car because the woman had hung up

the phone before he had a chance to ask. Officer Morales tried to call Johnson back multiple times, but she never answered and never called back.

¶ 14    The State rested. Lenoir's trial attorney moved for a directed verdict, which the circuit court denied. Lenoir waived his right to testify and the defense rested without presenting any evidence.

¶ 15    During closing argument, defense counsel argued that Lenoir did not know he was not permitted to have the car. The jury found Lenoir guilty of possession of a stolen motor vehicle. The circuit court denied Lenoir's motion for a new trial.

¶ 16    At the sentencing hearing, the circuit court found that Lenoir was subject to mandatory Class X sentencing due to prior convictions. Lenoir's prior convictions were for first degree murder and armed robbery committed in 1978 when Lenoir was 15 years old, and a 2004 conviction for possession of a stolen motor vehicle. The circuit court sentenced Lenoir to eight years and six months in prison with three years of supervised mandatory release. The circuit court later denied Lenoir's motion to reconsider.

¶ 17    This timely appeal followed.

¶ 18                                                    ANALYSIS

¶ 19    On appeal, Lenoir argues that 1) the State failed to prove beyond a reasonable doubt that he was guilty of possession of a stolen motor vehicle, and 2) Lenoir should not have been sentenced as a Class X offender.

¶ 20    Due process requires proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. *People v. Brown*, 2013 IL 114196, ¶ 48. When the sufficiency of the

evidence in a criminal proceeding is challenged, "a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. The court must draw all reasonable inferences from the evidence in favor of the prosecution. *People v. Lloyd*, 2013 IL 113510, ¶ 42. Under this standard of review, the trier of fact is responsible for resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts. *People v. Gray*, 2017 IL 120958, ¶ 35. "In weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Hardman*, 2017 IL 121453, ¶ 37 (quoting *People v. Jackson*, 232 Ill. 2d 246, 281 (2009)). A conviction will not be reversed "unless the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Id.* (quoting *People v. Campbell*, 146 Ill. 2d 363, 375 (1992)).

¶ 21    To prove Lenoir guilty of possession of a stolen motor vehicle, the State must prove beyond a reasonable doubt that (1) Lenoir possessed the vehicle; (2) he was not entitled to possess the vehicle; and (3) he knew that the vehicle had been stolen or converted. *People v. Anderson*, 188 Ill. 2d 384, 389 (1999); 625 ILCS 5/4-103(a)(1) (West 2016).

¶ 22    Lenoir argues the evidence established only two of the three elements of the offense. He concedes that he possessed the car, and that Johnson did not want him to possess the car after she was arrested. However, Lenoir maintains the evidence did not show Johnson ever informed him that she did not want him to possess the car, and without being informed of such there was

insufficient evidence to show he had knowledge the car would be considered stolen or converted.

¶ 23      Johnson purchased her car on March 8, 2017 and was arrested on March 12. Johnson testified that while being placed under arrest, she gave Lenoir permission to take the car and her belongings to her mother's house. Further, Johnson testified that Lenoir was not supposed to take her car anywhere else, but never testified that she told this to Lenoir. After Johnson was released from jail on March 17, she went to her mother's house and discovered her car was not there. The next day, she went to Lenoir's house and noticed her car was not there either. Johnson did not report the car stolen, likely because she assumed Lenoir still had it. Over the next week, she attempted to contact Lenoir multiple times regarding the car but was unsuccessful. On March 25, she finally contacted Lenoir when she visited his home and they spoke briefly. Instead of retuning the car, he drove off. Immediately after this encounter, Johnson reported her car stolen by filing a police report. Getting police involved provides circumstantial evidence that Lenoir was not permitted to drive the car, but the reasonable doubt standard holds the State to a higher burden of proof than merely providing circumstantial evidence of police involvement to establish a defendant's guilt. See *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) ("It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves  people in doubt whether innocent [individuals] are being condemned.")

¶ 24      Johnson did not testify that she explicitly told Lenoir he could not possess the car while she was in jail or wanted the car returned once she was released, but the State did not need to show Lenoir's knowledge using direct evidence. *People v. Frazier*, 2016 IL App (1st) 140911,

¶ 23. Lenoir driving off in the car makes it probable that he did not have permission to continue possessing the car, but "the fact that a defendant is 'probably' guilty does not equate with guilt beyond a reasonable doubt." *People v. Ehlert*, 285 Ill. Dec. 133, 144-145 (2004). The state did not prove knowledge, and Lenoir need not disprove his guilt. See *People v. Laubscher*, 183 Ill. 2d 330, 336, (1998) (stating that "the State may not leave to conjecture or assumption essential elements of the crime"); *People v. Escort*, 2017 IL App (1st) 151247, ¶ 21 (stating that "guilt may not rest on speculation").

¶ 25     As previously stated, Johnson did not testify that she directly told Lenoir he could not possess the car while she was in jail. She also failed to offer any evidence that she informed Lenoir she wanted the car returned when she was released from jail. If the March 25 encounter at Lenoir's house occurred, there no evidence that Johnson told Lenoir to return the car. A jury could only assume some direction was given. However, Lenoir's later actions do not indicate that he was aware the car would be considered converted or stolen.

¶ 26     When police approached the car in the alley on April 3, Lenoir did not attempt to evade or flee from police. Although he initially stated that the car was his, he later admitted he had possession because the owner was in jail. These actions do not indicate conscious guilt. See *People v. Whitfield*, 214 Ill. App. 3d 446, 454 (1991) ("Sufficient proof of intent to possess a stolen motor vehicle can be found in witness testimony that defendant drove a stolen vehicle down an alley, crashed it and then fled."). Moreover, Officer Morales testified that someone claiming to be Johnson abruptly hung up the phone on him without confirming that Lenoir could not possess the car. Considering all the evidence in the light most favorable to the prosecution, the State failed to prove beyond a reasonable doubt the third element of possession

of a stolen motor vehicle. Lenoir's conviction cannot stand because the evidence was insufficient to satisfy the State's burden of proof beyond a reasonable doubt that Lenoir knew the car would be considered converted or stolen

¶ 27　　When a reviewing court reverses a conviction based on insufficient evidence, the constitutional prohibition against double jeopardy (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 10) precludes the State from retrying the defendant. "The cornerstone of the double jeopardy clause is 'that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' " *People v. Williams*, 188 Ill. 2d 293, 307 (1999) (quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957)). Therefore, the proper remedy for a conviction based on insufficient evidence is acquittal. *People v. Brown*, 2013 IL 114196, ¶ 53. Furthermore, because we reverse Lenoir's conviction outright, we need not address his remaining argument regarding Class X sentencing.

¶ 28　　　　　　　　　　　　　　CONCLUSION

¶ 29　　For the foregoing reasons, the judgment of the circuit court is reversed, and we vacate the sentence.

¶ 30　　Reversed.